# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:19cr117-MHT |
| | ) | (WO) |
| LEVI JR CALHOUN, III | ) | |

## OPINION AND ORDER

Before the court is the issue of the mental competency of defendant Levi JR Calhoun, III to stand trial--that is, whether he is currently "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). At his competency hearing, counsel for both Calhoun and the government agreed to have the court rely solely on Calhoun's forensic psychological evaluation report from the Bureau of Prisons (BOP) to resolve this issue. Based on the BOP's report, and for the following reasons, the court holds that Calhoun is currently incompetent to

stand trial. The court further holds that he should be recommitted to the custody of the Attorney General for a reasonable period of time as "necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1).

A.

Calhoun, who is 27 years old, was charged in a two-count indictment for allegedly making false threats online and over social media concerning school shooting and bombing attempts in Alabama and Georgia. The day of his arrest, and after observing Calhoun and speaking with Calhoun's family, defense counsel filed a motion for psychological evaluation, to which the government did not object. Upon this request, the court ordered Calhoun to be committed to the BOP's custody for an independent evaluation and report concerning his mental competency. The BOP psychologist's findings follow.

2

The BOP psychologist diagnosed Calhoun with "Mild Intellectual Disability," BOP Report (doc. no. 13) at 10, which impairs his factual and rational understanding of the legal proceedings and charges against him and renders him "not competent to proceed at this point" with his case, *id*. at 15. The report describes this disability as "a disorder with onset during the developmental period that includes both intellectual and adaptive functioning deficits." *Id*. at 10. Thus, three criteria must be met to diagnose this disorder: "1) deficits in intellectual functions" (such as reasoning, problem solving, judgment, and academics); "2) deficits in adaptive functioning that result in failure to meet developmental and sociocultural standards" (such as living independently without ongoing support, or issues functioning across multiple environments like school and home); "and 3) onset of intellectual and adaptive deficits during the developmental period." *Id*. at 10. The BOP psychologist concluded that Calhoun meets each of these

3

criteria.

At least from the age of eight, Calhoun reportedly experienced significant deficits in intellectual and adaptive functioning. According to the report, Calhoun stated that he "had trouble learning," despite being in special education classes throughout his schooling. *Id*. at 3. The report indicated that he recalled "fighting and stuff" in school and having dropped out of school in the ninth grade because he "got tired of putting up with people." *Id*.

A review of Calhoun's school and health records amply corroborates his academic and behavioral problems in school. His IQ at eight years old was reportedly "in the extremely low range," with a score of 59. *Id*. at 5. School tests indicated that his "reading, spelling, and mathematic skills were at a first grade level, despite him being eight years old at the time." *Id*. Calhoun was reportedly significantly delayed in comparison with other children his age and had "diagnoses of Pervasive Developmental

4

Disorder ... ADHD, Elective Mutism, Parent/Child Relational Problem, Sibling Relational Problem, Phonological Disorder, and Mild Mental Retardation[1]." *Id*. at 5.

His adaptive functioning deficits as a child were also demonstrated by reports of him "being 'prone to aggressive and violent episodes.'" *Id*. Mental-health records from Calhoun's childhood and adolescence recount incidences of his aggression towards animals, other children at school, and his family. Calhoun was hospitalized at least four times after physically attacking his mother and sister and for punching holes in the wall during angry outbursts. As a result, he was assessed as having bipolar symptoms, in addition to Mild Mental Retardation, was medicated with antipsychotics and mood stabilizers, and received various diagnoses of Mood Disorder, Impulse Control Disorder, and Schizoaffective Disorder.

---

1. The BOP's report noted that Mild Intellectual Disability was "formerly called Mental Retardation." BOP Report (doc. no. 13) at 10.

However, the BOP psychologist determined that, despite past diagnoses and treatments, Calhoun's "mood reactivity may be better accounted for by his intellectual disability than a diagnosis of a mood disorder." *Id*. at 11. The report found Calhoun's past and current behavior to be inconsistent with Bipolar Disorder and found "no periods of mania or hypomania" during his evaluation period, or "any signs indicating [Calhoun] was experiencing a mood or psychotic disorder." *Id*. at 7.

Based on his BOP evaluation, Calhoun's intellectual functioning remains "extremely low." *Id*. at 8. His reported IQ is 57. His performance on the Wide Range Achievement Test (WRAT-4), used to measure "basic academic skills of reading, comprehension, spelling, and arithmetic," was also found to be "within the 'Extremely Low' intellectual range." *Id*. at 8-9. However, as the report noted, "low IQ alone ... is not inconsistent with being competent to stand trial." *Id*. at 12. Accordingly, Calhoun's results from the BOP's

competency-related assessments, reviewed below, are of great value to the determination of Calhoun's present competency to stand trial.

Calhoun's forensic evaluation included two competency-related assessments: The Competence Assessment for Standing Trial for Defendants with Mental Retardation (CAST-MR) and the Revised Competency Assessment Instrument (R-CAI). The CAST-MR is comprised of three sections and evaluates defendants' answers to questions on (1) basic legal concepts, (2) skills to assist their defense, and (3) understanding of case events. The R-CAI is "a semi-structured interview designed to assess an individual's ability to articulate understanding of the nature and consequences of criminal court charges and proceedings, and the ability to assist counsel in a defense." *Id*. at 13.

According to the BOP report, Calhoun answered correctly 22 questions out of 25 (88 %) on the first section of the CAST-MR regarding basic legal concepts. This score of 88 % is higher than the average score

"for individuals with mental retardation found competent to proceed." *Id*. at 12. On the second section of the CAST-MR (evaluating skills to assist one's defense), "Calhoun scored correctly on 10 out of 15 items, or 67 %." *Id*. at 12-13. A score of 67 % is similar to the average score of "individuals with mental retardation who were determined to be competent." *Id*. at 13. Finally, on the third section, which evaluates defendants' specific case events, Calhoun scored 60 %, which is "between the average scores of individuals with mental retardation who were found to be competent and those determined to be incompetent." *Id*.

In stark contrast, the R-CAI tool, used to assess Calhoun's understanding of the nature and consequences of his criminal case, yielded results that present much greater concern regarding his current competency to stand trial. According to the BOP report, despite some suitable responses, Calhoun's answers to several questions about important legal aspects revealed his

8

impaired rational understanding of the consequences he faces.  For example, when asked about the meaning of pleading guilty by reason of insanity, Calhoun's reported response did not express an actual understanding of the concept: "That means I didn't do it."  *Id*.  Calhoun's response half an hour later, after having learned more about the subject from the evaluator, was no less concerning: "It means they plead to they did it or something."  *Id*.  Similarly, the evaluator's teaching attempts apparently did not improve Calhoun's understanding of plea agreements.  Before and after his consideration of information on plea agreements, Calhoun steadfastly believed that pleading guilty with the benefit of an agreement results in the defendant forfeiting only his or her right to vote.

Calhoun also demonstrated a lack of comprehension concerning the basic roles of individuals in the courtroom.  While he stated that the role of counsel for the government is "to find [him] guilty", he had

9

expressed minutes earlier that the roles of a prosecutor and jury are to be on the same "side" as the judge. *Id*. at 14. Calhoun even struggled to relate an account of his arrest for the instant charges to the evaluator. *Id*.

Accordingly, although the report found that Calhoun expressed "some factual understanding of the legal system," and despite Calhoun's personal belief that he "is competent to continue," the BOP psychologist found that Calhoun's "rational understanding of the legal charges against him and the legal proceedings" are impaired, and that he lacks "a complete appreciation of the charges against him." *Id*. at 15. Even after attempts to educate him on certain issues, the psychologist found that Calhoun would sometimes provide "rote response[s]," appeared to not have "an appreciation of the information or how it applied to his case," and sometimes "did not recall the information" that had just been provided to him. *Id*. Therefore, the psychologist concluded: "[T]here is

evidence to suggest that Mr. Calhoun suffers from a mental disease that significantly impairs his present ability to understand the nature and consequences of the court proceedings against him and impairs his ability to properly assist counsel in a defense. In view of Mr. Calhoun's mental condition and related behavior, it appears that he is not competent to proceed at this point." *Id*. Based on this information, the court agrees.

B.

18 U.S.C. § 4241(d)(1) requires the court to order the Attorney General to hospitalize an incompetent defendant for a reasonable period of time not to exceed four months in order for mental-health personnel to attempt to restore him to competency and to determine whether there is a substantial probability that he will become competent in the foreseeable future. An extension of this period is also possible under § 4241(d)(2). The court will therefore order Calhoun

**recommitted for purposes of competency restoration.**

**C.**

**By agreement of the parties, the court will order that the BOP, after reaching an initial determination concerning Calhoun's restorability, retain custody of Calhoun until further order of the court, even if such period of custody exceeds four months. The parties find, and the court agrees, that it is in the best interest of Calhoun to remain in the custody of BOP, and not be returned to local custody.**

**\*\*\***

**Accordingly, it is ORDERED and DECLARED that defendant Levi JR Calhoun, III is mentally incompetent to stand trial in this cause.**

**It is further ORDERED that defendant Calhoun is recommitted to the custody of the Attorney General of the United States, pursuant to 18 U.S.C. § 4241(d).**

**It is further ORDERED that the Attorney General**

shall, pursuant to 18 U.S.C. § 4241(d)(1), hospitalize defendant Calhoun for treatment in a suitable facility for such reasonable period of time as is necessary to determine whether there is a substantial probability that in the foreseeable future defendant Calhoun will attain the capacity to permit his trial to proceed.

It is further ORDERED that, after a determination concerning defendant Calhoun's restorability is reached, the BOP mental-health facility shall still retain custody of defendant Calhoun until further order by the court.

DONE, this the 20th day of June, 2019.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**